

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00035-CR

JORDAN COLBY MEEK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2020-C-091

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

<h1 style="text-align:center">MEMORANDUM OPINION</h1>

The State filed a motion to revoke Jordan Colby Meek's community supervision, alleging that Meek had failed to report to community supervision. After a hearing, in which Meek proceeded pro se, the County Court at Law of Panola County revoked Meek's community supervision and sentenced him to two years' incarceration in state jail.

On appeal, Meek contends that he did not intelligently, knowingly, and voluntarily waive his right to court-appointed counsel.

We overrule this point of error and affirm the trial court's judgment because we find that Meek invoked his right to self-representation and intelligently, knowingly, and voluntarily waived his right to counsel.

## I. Factual and Procedural Background

In August 2020, Meek was charged with the state-jail-felony offense of possession of methamphetamine in an amount less than one gram.[1] On August 5, 2021, pursuant to an agreement with the State, and with the advice of court-appointed counsel, Meek entered a plea of guilty to the offense as charged in the indictment, was found guilty, and was sentenced to two years' incarceration in state jail, probated for two years, and a $10,000.00 fine, with $8,000.00 of the fine probated.

The State filed a motion to revoke Meek's community supervision on December 1, 2021. In its motion, the State alleged that Meek had "failed to report to [community supervision] as directed for the months of September, October, and November 2021." Meek was arrested on

---

[1]TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Supp.).

2

January 21, 2023. On January 23, 2023, while in jail, Meek signed and then crossed out his signature on a form requesting appointed counsel and refused to sign a certificate of service. On January 24, 2023, the State filed an amended motion to revoke community supervision, alleging that Meek had failed to report to community supervision as directed for any of the months from September 2021 through December 2022.

On January 31, 2023, the trial court held a hearing on the State's motion to revoke Meek's community supervision. At the outset of the hearing, the court asked Meek if he planned to hire an attorney, and Meek responded, "I was planning on just talking to [the court] myself." The court questioned Meek regarding the form requesting appointed counsel that he signed and then scratched out his name. Meek stated that he scratched out his name because he did not understand what he was signing.

The court explained to Meek that he had three options: (1) he could hire a lawyer to represent him at the revocation hearing; (2) if he was indigent, the court would appoint a lawyer to represent him; or (3) "and by far the very worst option," Meek could represent himself. Meek then asked the court to appoint him an attorney. The court stated that it would appoint a lawyer and reset the hearing to the following week, February 8, 2023. But Meek interjected, "If there was any way, Your Honor, that we could just get this dealt with so there is no wait." The court informed Meek that he was facing two years in prison if he were found to have violated the terms of his community supervision, and the court told him that that was "a very important moment in [his] life." The court continued, "And there is no way we can proceed with this case today unless you represent yourself, and I sure do advise you against doing that." The court reiterated,

"[T]he only way to go forward today is with you representing yourself, and that's a terrible idea." Meek responded, "I do wish to move forward, and represent myself, because I did violate. I did."

The court warned Meek:

Well, before you say anything further, I have to, the law requires that I admonish you concerning the -- first of all, whether you're making this decision freely and voluntarily and knowingly. The law requires that I investigate that. The law also requires that I advise you of the consequences of whatever you may do here. And the law requires that I advise you of the problems, and why it's such a bad idea for you to represent yourself.

The court then questioned Meek about his background, education, fitness, and knowledge of the legal proceedings. Although Meek had represented himself before "in [his] earlier years," Meek denied suffering from any disabilities or handicaps. He admitted that he had no legal training and that he had never questioned or cross-examined a witness or presented an argument to a court. Meek denied having any familiarity with the Texas Penal Code, the Texas Code of Criminal Procedure, the Texas Rules of Evidence, or the relevant provisions of the Texas Health and Safety Code, but he stated that he understood that, if he represented himself, he would be held "to know every single thing" in them. The following colloquy occurred:

THE COURT: In other words, you're held to the exact same standards that a courtroom lawyer would be held to if we go forward in this case today. Do you understand?

MR. MEEK: Yes, Your Honor.

THE COURT: Why is it you think you'd be better off representing yourself than having a lawyer?

MR MEEK: Because I'm not wasting the Court's time, Your Honor.

4

THE COURT: Well, the Court has got plenty of time, and the Court's main consideration is making sure that this is done right. Do you understand?

MR. MEEK: Yes, Your Honor.

Under questioning from the court, Meek stated that he understood what he was charged with, the available range of punishment, and that he had already agreed that he would go to jail for two years if he was found to have violated the terms of his community supervision. Meek understood that, as an incarcerated criminal defendant representing himself, he would be unable to investigate the facts and research the law the way an attorney could, he would be unable to negotiate effectively with the State, and he would be unable to raise a claim of ineffective assistance of counsel. Before proceeding further, the court asked Meek, "You understand I am fully prepared to make sure you have a lawyer, to appoint you a lawyer, and to give that lawyer adequate time to prepare. So you understand that?" Meek responded, "Yes, sir. Your Honor."

Meek explicitly denied (1) that he had been threatened or forced into making this decision, (2) being under the influence of drugs or alcohol, (3) ever being treated for or diagnosed with a mental illness, (4) ever being found incompetent to stand trial, and (5) being under the influence of any prescription medications. Meek reiterated that, "[k]nowing all of this," he still wanted to proceed in representing himself. The court held:

> Mr. Meek, as reluctant as I am here, I don't really have much choice. I find that you're mentally competent. I find that you understand what you're doing. I find that you understand the risks and problems of self-representation. I find that you're mentally competent to make this decision, and you're not being forced to make it. So as reluctant as I am, the law says I have to let you represent yourself in this case.

Meek then reviewed and signed, in open court, a written waiver of his right to representation by counsel. The hearing then proceeded with Meek representing himself.

Meek entered a plea of true to the allegations in the State's motion to revoke, specifically admitting that he failed to report to community supervision for the months alleged. Amy Holland, a community supervision officer, testified that she met with Meek and that he understood the terms and conditions of his community supervision. However, other than a single telephone call, she had neither seen nor heard from Meek since he had been placed on community supervision. After being admonished regarding his Fifth Amendment privilege not to incriminate himself, Meek explained:

> [T]he reason as to why I didn't show up is because of me violating it more than just not showing up. I had, I had used substances, and I was scared to show up. And after that, me not showing up the first time, my fear of showing up grew, which is the reason why I didn't show up. That's what I have. That's all I have.

At the conclusion of the hearing, the trial court found that Meek had violated the terms of his community supervision, granted the State's motion to revoke, and ordered Meek to serve two years in state jail.[2] Meek filed this appeal, arguing that he did not unequivocally, intelligently, knowingly, and voluntarily waive his right to counsel.

## II.    Meek's Waiver of Counsel Was Intelligent, Knowing, and Voluntary

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'" *Williams v. State*, 252 S.W.3d 353, 355 (Tex. Crim. App. 2008) (alteration in original) (quoting U.S. CONST. amend. VI). As the Texas Court of Criminal Appeals has explained,

---

[2]The trial court suspended the entire fine.

> The right to counsel at trial is regarded as fundamental. The assistance of counsel protects a defendant's right to a fair trial; counsel ensures that the prosecution's case is subjected to meaningful adversarial testing and safeguards the defendant's rights. An indigent defendant is therefore entitled to appointed counsel unless the defendant competently, intelligently, and voluntarily waives the right to counsel.

*Id.* (citations omitted). Although "the right to defend oneself at trial is 'fundamental' in nature, it is clear that it is representation by counsel that is the standard, not the exception." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 161 (2000) (citation omitted). As a result, "there is a strong presumption against waiver" of the right to counsel. *Patterson v. Illinois*, 487 U.S. 285, 307 (1988) (Stevens, J., dissenting). Such "a waiver may only be accepted if made with full awareness of 'the dangers and disadvantages of self-representation.'" *Id.* (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). "The prosecution has a heavy burden to demonstrate that a waiver of constitutional rights was made intelligently, knowingly, and voluntarily, particularly when that right was the right to counsel." *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. [Panel Op.] 1980).

"In order competently and intelligently to invoke his Sixth Amendment right to represent himself, an accused 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."'" *Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989) (quoting *Faretta*, 422 U.S. at 835); *see* TEX. CODE CRIM. PROC. ANN. art 1.051(g) (Supp.) (court "shall advise the defendant of the nature of the charges . . . and, if the defendant is proceeding to trial, the dangers and disadvantages of self-representation"). As explained by the Texas Court of Criminal Appeals,

Generally, the record must be sufficient for the reviewing court to make an assessment that appellant knowingly exercised his right to defend himself. Admonishments of defendants who wish to proceed pro se should include an effort to ensure that the defendant is aware of the practical disadvantages of representing himself. The defendant should be aware that there are technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his pro se rights. *Martin*[ *v. State*, 630 S.W.2d 952 (Tex. Crim. App. 1982)]; *Burton v. State*, 634 S.W.2d 692 (Tex. [Crim.] App. [Panel Op.] 1982). As *Faretta* . . . held, his eyes should be open to the fact that, while it is undoubtedly his right, he is about to embark on a risky course.

*Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988). The trial court is not, however, required to follow a "particular 'script'" or engage in "formulaic questioning" in order "to assure itself that an accused who has asserted his right to self-representation does so with eyes open." *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991). "It is required only that the record 'contain proper admonishments concerning pro se representation and any necessary inquiries of the defendant so that the trial court may make "an assessment of his knowing exercise of the right to defend himself."'" *Id.* (quoting *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984)).

We review de novo the issue of whether Meek validly waived his constitutional right to counsel. *See United States v. Garcia-Hernandez*, 74 F. App'x 412, 415 (5th Cir. 2003) (per curiam) (reviewing de novo defendant's claim that waiver of Sixth Amendment right to counsel was not valid because trial court failed to admonish him about dangers and disadvantages of self-representation); *Hernandez v. State*, No. 03-19-00202-CR, 2020 WL 3526355 (Tex. App.—Austin June 30, 2020, no pet.) (mem. op., not designated for publication).

Meek unequivocally asserted numerous times that he wished to represent himself. The trial court engaged Meek in a dialogue in an attempt to see if he was knowingly and intelligently

8

waiving his right to be represented by counsel and, instead, choosing to represent himself.[3] The court addressed Meek's understanding of (1) the revocation proceedings and the charge against him, (2) the range of punishment, (3) his right to representation, (4) his right to appointment of counsel if he were indigent, (5) his education, and (6) his lack of legal work experience. The court also inquired into his understanding that he, as a non-lawyer, would nonetheless be held to the same standards as a lawyer. Meek also admitted that he understood that having a lawyer would have several practical advantages over representing himself.

The trial court was able to observe Meek during the hearing, engage him in a dialogue regarding the proceedings, and observe his definite and volitional behavior and consistent, unequivocal insistence on self-representation. On this record, we a cannot conclude that the trial court erred in finding Meek's waiver of counsel knowing, voluntary, and intelligent. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:    August 15, 2023
Date Decided:    August 28, 2023

Do Not Publish

---

[3]Meek admits that he "was admonished appropriately and extensively regarding his potential waiver of counsel."